**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                  :

EXPONENT, INC.                :

          Plaintiff,       :       Civil Action No. 25-cv-5888

      v.              :

LABQ CLINICAL DIAGNOSTICS, LLC  :

          Defendant.     :

---------------------------------------------------------------x

**COMPLAINT**

Plaintiff Exponent, Inc. ("Exponent"), by and through its attorneys, Aguilar Bentley LLC, as its Complaint against Defendant LabQ Clinical Diagnostics, LLC ("LabQ" or "Defendant"), alleges as follows:

**NATURE OF THE CASE**

1.      LabQ owes Exponent $283,255.62, plus interest, for expert services performed by Exponent for LabQ in the matter captioned *PerkinElmer Health Sciences v. LabQ Clinical Diagnostics*, No. 22-cv-11412 (D. Mass.).

2.      Exponent has made numerous attempts to obtain payment from LabQ for the outstanding amount that is owed, but no payment has been forthcoming.

3.      Accordingly, Exponent brings this suit for breach of contract, account stated, and unjust enrichment and seeks an appropriate judgment on the outstanding amount, prejudgment interest, and costs incurred.

## THE PARTIES

4.      Plaintiff Exponent is a corporation organized under the laws of the state of Delaware and has its principal place of business in San Mateo County, California at 149 Commonwealth Drive, Menlo Park, California 94025.

5.      Defendant LabQ is a limited liability company organized under the laws of the state of New York and has its principal place of business in Kings County, New York at 140 58th Street, Bldg. A, Suite 3L, Brooklyn, NY 11220.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties hereto are citizens of different states.

7.      There is an actual case or controversy pursuant to 28 U.S.C. § 2201.

8.      Venue is proper under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### The PerkinElmer Action

9.      Upon information and belief, LabQ owns and operates laboratories in Budd Lake, NJ and Brooklyn, NY and offers services including COVID-19 testing.

10.     On September 1, 2022, PerkinElmer Health Sciences, Inc. ("PerkinElmer") filed an action against LabQ in the District Court of Massachusetts (Case No. 22-cv-11412 (D. Mass.), alleging that LabQ refused to pay for COVID-19 testing products sold and delivered by PerkinElmer (the "PerkinElmer Action").  PerkinElmer asserted claims against LabQ for breach

of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, seeking damages of $6.3 million.

11.    On June 1, 2023, LabQ filed counterclaims against PerkinElmer, alleging that PerkinElmer had sold defective testing reagents to LabQ and asserting causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, gross negligence, and unfair and deceptive trade practices.

12.    LabQ was represented in the PerkinElmer Action by Dechert LLP ("Dechert").

***LabQ Engages Exponent in Connection with the PerkinElmer Action***

13.    Exponent is a global multidisciplinary engineering and scientific consulting firm that brings together over 90 technical disciplines and 950 consultants.  Its services include providing independent scientific expertise for clients facing high-profile disputes and litigation.

14.    On or about October 7, 2024, LabQ retained Exponent as an expert in the PerkinElmer Action by an engagement letter signed by Dechert, LabQ's counsel, which enclosed Exponent's Schedule of Rates and Charges and Terms and Conditions of Agreement (the "Engagement Agreement").  A copy of the executed Engagement Agreement is attached hereto as **Exhibit 1**.

15.    Pursuant to the Engagement Agreement, Exponent's scope of services was "anticipated to include research and review of publicly available information on the performance of the [PerkinElmer] test, technical analysis of data associated with the test, the appropriateness of various standard operating procedures, and analysis of the cause of false positive test results." (Ex. 1 at 1.)

16.    The Engagement Agreement provided:

Exponent's direction on this project is with Dechert on behalf of [LabQ] and, as such, all charges (i.e., fees and expenses) incurred by Exponent on this project will be billed to [Dechert's'] office but will be the responsibility of [LabQ], independent of other parties/payees involved.  Although Exponent has been retained by [Dechert] with respect to the above-captioned litigation, Exponent recognizes that [LabQ] is its ultimate client, and that [LabQ] is responsible for payment of Exponent's invoices.

(*Id.* at 2.)

17.     The Terms and Conditions of Agreement provide that "[i]nvoices are typically rendered monthly or in accordance with the agreed upon payment schedule and are due within 30 days of the date of the invoice." (*Id.*, Terms and Conditions § 1.)

18.     The Terms and Conditions provide that "[t]his agreement is solely between, and may only be enforced by, Exponent and the client . . . ."  (*Id.*, Terms and Conditions § 10.)

19.     The Terms and Conditions provide that "[t]his agreement shall be construed, and the legal relations between the parties hereto shall be determined, in accordance with the internal laws of the state of California, without regard to the conflicts of laws principles of such state." (*Id.*, Terms and Conditions § 13.)

20.     The Terms and Conditions provide that "Exponent shall recover attorney fees and costs incurred in enforcing payment obligations hereunder."  (*Id.*)

### ***LabQ Fails to Pay Exponent for Its Services***

21.     From October 2024 through August 2025, Exponent provided its services to LabQ pursuant to the Engagement Agreement, including reviewing documents and data, providing technical consultations, submitting an expert report in November 2024, responding to a subpoena, preparing for and attending a deposition in January 2025, and preparing for trial.

22.     Although the Engagement Agreement stated that "[a] retainer in the amount of $15,000 is required prior to commencement of our work," Exponent proceeded in good faith

4

without a retainer from LabQ in order to meet the expert report deadline in November, only three weeks after Exponent was engaged.

23. Exponent timely issued invoices for the services performed on November 8, 2024, November 20, 2024, December 17, 2024, January 11, 2025, February 18, 2025, March 17, 2025, July 1, 2025, July 31, 2025, and August 13, 2025. These invoices total $283,255.62 and are due and owing.

24. LabQ did not pay any of the invoices issued by Exponent.

25. When Exponent inquired about payment of its invoices, it was assured by Dechert that LabQ had received the invoices and promised an update on when payment would be forthcoming.

26. On or around March or April of 2025, Exponent was informed that, due to a pending civil fraud suit brought by the United States Government in the Southern District of New York against LabQ, LabQ was unable to pay its legal fees, including fees due to Exponent, without court approval.

27. On or around June 2025, Exponent was notified that the Southern District of New York had approved the release of funds to allow LabQ to pay its legal fees, including fees due to Exponent.

28. However, LabQ then claimed that LabQ's funds were tied up in real estate properties owned by its CEO, Moshe Landau, which needed to be sold before payment could be made.

29. LabQ's continued failure to pay its legal and expert fees caused Dechert to petition the court to withdraw as counsel for LabQ in the PerkinElmer Action on August 7, 2025.

30.    On August 15, 2025, Exponent re-sent all of the invoices to LabQ through Dechert, along with a table summarizing the amount due and owing under each invoice.

| Invoice Number | Invoice Date | Invoice Amount | Days Since Issuance |
|---|---|---|---|
| 577826 | 11/8/2024 | $ 25,624.00 | 280 |
| 579599 | 11/20/2024 | $ 91,826.00 | 268 |
| 581644 | 12/17/2024 | $ 3,358.00 | 241 |
| 584221 | 1/11/2025 | $ 3,002.00 | 216 |
| 587597 | 2/18/2025 | $ 66,273.00 | 178 |
| 590387 | 3/17/2025 | $ 39,229.12 | 151 |
| 601319 | 7/1/2025 | $ 6,059.00 | 45 |
| 604528 | 7/31/2025 | $ 19,367.00 | 15 |
| 605380 | 8/13/2025 | $ 28,517.50 | 2 |
| Total Due | | $ 283,255.62 | |

31.    Dechert responded the same day and confirmed that the invoices were forwarded to LabQ.

32.    LabQ did not refute the validity of the invoices and therefore accepted that the account was correct as stated.

33.    To date, LabQ has failed to issue any payment on Exponent's invoices and, as a result, owes Exponent a total of $283,255.62 in unpaid bills, in addition to accruing interest and its attorney fees and costs incurred in enforcing LabQ's payment obligations.

**_The Government Action_**

34.    On June 13, 2024, the United States filed a complaint-in-intervention in the Southern District of New York against LabQ, Moshe Landau, and other companies owned or operated by Mr. Landau, alleging that they had fraudulent billed the federal program tens of millions of dollars for reimbursements to healthcare providers for COVID-19 testing of uninsured persons.  The government sought damages and civil penalties under the False Claims Act and recovery of government funds under common law.

35. On or around August 1, 2024, the government and LabQ entered into a stipulation providing for the court to so-order writs of garnishment and attachment of LabQ's real properties and bank accounts valued at approximately $50 million.

36. LabQ moved to quash the writs of garnishment and attachment of its properties. On March 13, 2025, the court denied LabQ's motion to quash, holding that the government had established the probable validity of its False Claims Act claims.

37. On August 12, 2025, the government moved for an order to show cause why LabQ should not be held in contempt of the Court's orders, alleging that LabQ failed to disclose and denied owning real properties in which it or Mr. Landau has an ownership interest in direct violation of the Court's order. These secreted properties include over 25 undisclosed real properties owned by Mr. Landau through LLCs and a hotel in Florham Park, New Jersey owned by Mr. Landau.

38. That motion is set for oral argument in the SDNY before Judge Liman on October 22, 2025.

**AS AND FOR A FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT – ENGAGEMENT AGREEMENT**

39. Exponent repeats and realleges each of the foregoing allegations as if fully set forth herein.

40. Exponent and LabQ entered into the Engagement Agreement, which enclosed and incorporated Exponent's Schedule of Rates and Charges and Terms and Conditions of Agreement and is a valid and binding agreement.

41. LabQ agreed to pay Exponent for its services on a time-and-expense basis as set forth in the Schedule of Rates and Charges.

42.    Exponent performed its obligations under the Engagement Agreement, including providing the services described in the Engagement Agreement and timely billing LabQ by way of detailed invoices.

43.    LabQ breached the Engagement Agreement by failing to pay Exponent's invoices submitted thereunder.

44.    By reason of LabQ's breach, Exponent has suffered damages in the amount of $283,255.62, plus interest at the rate of 10 percent per annum pursuant to California Civil Code § 3289.

45.    Exponent is also entitled to recover its attorney fees and costs incurred in enforcing LabQ's payment obligations pursuant to the Engagement Agreement.

**AS AND FOR A SECOND CAUSE OF ACTION**
**ACCOUNT STATED**

46.    Exponent repeats and realleges each of the foregoing allegations as if fully set forth herein.

47.    Exponent and LabQ had an ongoing business relationship between October 2024 through August 2025, during which period, Exponent provided expert services to LabQ pursuant to the Engagement Agreement.

48.    On August 15, 2025, Exponent sent to LabQ a summary of all of the transactions between the parties indicating a balance of $283,255.62 owing from LabQ to Exponent.

49.    LabQ has had a reasonable time to object to the account as rendered, but has not done so, and has thus impliedly agreed that the account was correct as rendered.

50.    An account was therefore stated between the parties no later than August 15, 2025.

51.    LabQ agreed to pay the amount stated to Exponent, but LabQ has not paid any part of that amount.

## AS AND FOR A THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

52.    Exponent repeats and realleges each of the foregoing allegations as if fully set forth herein.

53.    Exponent provided services to LabQ with the reasonable expectation that LabQ would pay it for the services rendered.

54.    LabQ received the benefit of Exponent's services in connection with the PerkinElmer Action.

55.    LabQ has not paid, and Exponent has not been compensated, for Exponent's services, causing Exponent to suffered damages in the amount of $283,255.62, plus interest.

56.    It would be against equity and good conscience to permit LabQ to retain the value of Exponent's services without compensating Exponent.

## PRAYER FOR RELIEF

WHEREFORE, Exponent respectfully demands judgment in its favor and against LabQ as follows:

a.    Judgment against LabQ in the amount of $283,255.62, plus all other damages in an amount to be determined at trial;

b.    Prejudgment and post-judgment interest;

c.    Attorneys' fees and costs incurred in this action;

d.    Such other and further relief as the Court deems just and proper.

Dated:  October 21, 2025

AGUILAR BENTLEY LLC

By:    *Anna Aguilar*

Anna Aguilar
5 Penn Plaza, 19th Floor
New York, NY 10001
(212) 835-1521
aaguilar@aguilarbentley.com
*Attorneys for Plaintiff Exponent, Inc.*