# EXHIBIT 1

Ex ponent

Exponent
1075 Worcester Street
Natick, MA 01760

telephone 508 652 8500
www.exponent.com
Offices in Asia, Europe, and North
America

October 2, 2024

Mauricio A. España
Partner
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Via Email: mauricio.espana@dechert.com

Subject:    PerkinElmer Health Sciences v LabQ Clinical Diagnostics - Revised
            Case No. 1:22-CV-11412 (MA)
            Exponent Project No. 2407466.000

Dear Mr. España:

Thank you for your interest in retaining Exponent, Inc. (Exponent) to serve as a consultant to Dechert LLP (Dechert) to assist with your representation of LabQ Clinical Diagnostics, LLC ("Client") in the matter captioned *PerkinElmer Health Sciences v. LabQ Clinical Diagnostics, No. 22-cv-11412 (D. Mass)*. This letter presents our current understanding of the scope of services sought and the terms of the engagement.

It is our understanding that the Client is interested in an analysis of the technical issues associated with PerkinElmer's COVID-19 test. At the present time, our scope of services is anticipated to include research and review of publicly available information on the performance of the test, technical analysis of data associated with the test, the appropriateness of various standard operating procedures, and analysis of the cause of false positive test results. Written summaries and expert reports will be provided on request. You may also request oral testimony related to the same.

**Work Product.** The purpose of the engagement is to enable you to render advice to the Client in connection with the above-captioned litigation. Therefore, Exponent's communications with Dechert and the Client, Exponent's work product, including drafts, and all information and data received from Dechert or the Client are, in each case, covered by attorney-client privilege and/or the attorney work product doctrine, as applicable. Exponent will make all reasonable efforts to preserve those privileges, as directed by you.

Exponent's services will be provided on a time-and-expense basis. Charges will include professional fees, equipment usage fees, and other out-of-pocket expenses according to our *Schedule of Rates & Charges*, a copy of which is enclosed and made a part hereof by reference.

2407466.000 - 5046

Mauricio A. España
October 2, 2024
Page 2

Exponent charges $515 per hour for my services in calendar year 2024. Other Exponent staff members will be utilized where appropriate.

Exponent's services are provided only in accordance with our *Terms and Conditions of Agreement*, a copy of which is enclosed and made a part hereof by reference. It is our understanding that Exponent's direction on this project is with Dechert on behalf of the Client and, as such, all charges (i.e., fees and expenses) incurred by Exponent on this project will be billed to your office but will be the responsibility of the Client, independent of other parties/payees involved. Although Exponent has been retained by you with respect to the above-captioned litigation, Exponent recognizes that the Client is its ultimate client, and that the Client is responsible for payment of Exponent's invoices. Please verify the contact information for billing purposes in the table at the end of this letter. If it is not correct, please provide the updated information. For purposes of the *Terms and Conditions of Agreement*, "client" shall mean LabQ Clinical Diagnostics, LLC.

Based on the information you have provided, we have performed a conflict-of-interest check for the following parties:

- PerkinElmer Health Sciences, Inc.
- LabQ Clinical Diagnostics, LLC

Using this information, Exponent has determined that it does not currently have a conflict that would preclude us from assisting you in this matter. Please inform us as soon as possible if this list of parties is inaccurate or incomplete, and if other parties become involved as this matter proceeds.

A retainer in the amount of $15,000 is required prior to commencement of our work. The retainer will be held on account until the final invoice has been issued, at which time, you will have the option of paying the invoice in full and requesting a refund of your retainer or applying the retainer against the final invoice. Exponent will begin work after the retainer is received. Exponent's federal tax ID number is ███████ and is included on all invoices.

This proposed retention letter is valid for 15 days from the date first set forth above. Please sign and return this letter if you would like us to proceed with this work. If you have any questions or require additional information, please do not hesitate to contact me. We look forward to working with you.

2407466.000 - 5046



Mauricio A. España
October 2, 2024
Page 3


Sincerely,

Alexis Sauer-Budge, Ph.D.
Principal Scientist
+1-508-652-8563
asauerbudge@exponent.com

Enclosures: 2

Accepted by:  MAURICIO ESPAÑA

_____
Authorized Signature

PARTNER
_____
Name and Title

Declert LLP
_____
Organization

10-7-24
_____
Date

2407466.000 - 5046

E$^x$

Mauricio A. España
October 2, 2024
Page 4

## INVOICE TRANSMITTAL ADDRESS

By default, Exponent will email invoices to the email address(es) listed below. Please verify the email address(es) as well as any reference information that should be contained on the invoice.

| Invoice Reference Number(s): | ☐ Dechert's File No. | | |
|---|---|---|---|
| | ☐ Case Docket No. | 1:22-CV-11412 | State: MA |
| | ☐ Other Reference No. | | |

| Name/Title | Email |
|---|---|
| Mauricio A. España | mauricio.espana@dechert.com |

Physical address
for invoicing if
different from
above:

Other Notes:

2407466.000 - 5046

Ex

**2024 SCHEDULE OF RATES AND CHARGES**



## PROFESSIONAL FEES

Exponent charges its clients for services provided according to the qualifications and experience level of the individuals assigned to the client's project at each employee's specific current hourly rate. These rates are modified annually on or about January 1. Exponent provides the following staff classifications that designate relative experience, training, and accomplishment within a technical field, together with the range of hourly rates. Payment is required in U.S. dollars within 30 days after the date of the invoice, or interest charges may be applied.

| Classification | Description | Rate |
|---|---|---|
| Principal/Officer | Senior-level technical or management person, responsible for technical direction or general management or administration. | $350–$990 |
| Senior Manager | Senior technical professional providing high-level or individual consulting assignments, or overall technical direction of projects, may have management responsibility for a technical field. | $325–$625 |
| Manager | Senior technical professional providing high-level or individual consulting assignments or overall technical direction of projects. | $275–$490 |
| Senior Engineer/ Scientist/Associate | Experienced technical professional skilled in planning, organizing, controlling, and executing complex, higher-order projects or assignments. | $235–$390 |
| Engineer/Scientist/ Associate | Trained/degreed professional responsible for executing technical assignments in support of client projects. | $220–$360 |
| Technical/Research Specialist | Personnel experienced in instrumentation, programming, testing, library science, or the development or execution of research methodologies in support of projects. | $175–$260 |
| Technical/Research Assistant | Laboratory, data processing, engineering-graphics, engineering technician, or other personnel responsible for the execution of specialized tasks in support of projects. | $105–$260 |
| Non-technical Assistant | Personnel who assist technical staff in various non-technical areas, including scheduling, report productions, communications, logistics, and project support. | $90–$175 |

## TECHNICAL EQUIPMENT, SOFTWARE AND LAB CHARGES

Exponent personnel may utilize Exponent's technical equipment and software to assist them in the performance of client's project. Exponent charges an hourly or daily usage fee for selected equipment, software and labs (e.g., scanning electron microscope, finite element software and biomedical laboratory).

## TRAVEL AND MEAL EXPENSES

Travel and meal expenses are charged at Exponent's cost. Local mileage is charged in accordance with I.R.S. guidelines. The most effective air travel for the project will be utilized and personnel below the Principal classification will charge coach fares.

## OTHER PROJECT EXPENSES

Project expenses including materials, subcontractors and third-party vendors are charged at cost plus fifteen percent. If the client prefers to procure the project expenses directly to avoid the additional fifteen percent charge then notify Exponent at the initiation of the engagement. Consumable materials may be charged on an applied rate rather than an incurred cost basis.

# TERMS AND CONDITIONS OF AGREEMENT

E*x*ponent·

1. Work performed on a time-and-expenses basis will be billed in accordance with Exponent's most current Schedule of Rates and Charges. Work performed under a fixed-price arrangement will be billed at the agreed fixed amount. A payment in advance or a suitable retainer may be required from the client. Exponent will hold any retainer until the final invoice is prepared, at which time it will reconcile the client's account. Following Exponent's completion of work, the client is responsible for and may be charged for the storage and disposal of evidence, exemplars and samples. Exponent will charge taxes where applicable.

2. Invoices are typically rendered monthly or in accordance with the agreed upon payment schedule and are due in U.S. dollars within 30 days of the date of the invoice. Exponent, without liability, may withhold delivery of reports and other data, and may suspend performance of its obligations to the client, pending payment of outstanding charges. Exponent reserves the right to decline further work with any client who has been delinquent in payment of Exponent's invoices.

3. Exponent will perform its services consistent with the professional skill and care ordinarily provided by professionals practicing in the same or similar locality under the same or similar circumstances. In the event that Exponent fails to meet the foregoing standard of care or that the client has any other claim, client's sole and exclusive remedy shall be limited to Exponent re-performing the work at Exponent's expense, or reimbursing the client up to the amount the client paid Exponent for the work. No other warranty, express or implied, is made concerning work performed under this agreement.

4. The client assumes full and complete responsibility for all uses and applications of Exponent's recommendations or work under this agreement, or failure to use recommendations or work, and agrees to indemnify and hold harmless Exponent, its affiliates, officers, directors, employees, agents, and stockholders against any and all liabilities, damages, losses, claims, demands, actions, causes of action, and costs including attorney's fees and expenses resulting from the death or injury to any person or damage to any property or any other alleged or actual damages resulting from the aforementioned use, application, or nonuse of Exponent's recommendations or work under this agreement and for any third party claim(s) in connection with the use, sale, manufacture, distribution of any client product(s) and/or service(s).

5. Except as provided in Section 4, in no event shall either party, its affiliates, officers, directors, employees, agents, or stockholders be liable for any incidental or consequential damages under this agreement.

6. Exponent will hold in confidence all non-public information provided by the client that the client designates as confidential or proprietary. If Exponent and the client have entered into a separate non-disclosure agreement, it is deemed incorporated herein. All deliverables and any improvements to the client's processes or products arising from this agreement shall be and remain the property of client; however, Exponent has a right to retain a copy of such deliverable(s). Exponent shall retain all rights, title, and interest in and to its proprietary information, along with any modifications, improvements or additions, including, but not limited to Exponent's know-how, methodologies, techniques, processes, tools, test fixtures, technologies, trade secrets, software, data, databases, algorithms, source code, computational engines, logic formulas, non-interface worksheets, macros, and other materials used by Exponent in connection with providing its services.

7. Anybody required to be present at Exponent's laboratories for the project, including other parties and the like, will be required to sign an agreement that contains confidentiality obligations and a general release of claims for injuries or damages to property related to the visit.

8. Client understands that evidence, materials, test articles or the like ("Articles") may be damaged or destroyed during testing and as such Exponent is not responsible for any loss or damage thereto. The client shall bear the risk of loss of the Articles while they are in transit. Notwithstanding any language to the contrary herein, should Exponent be obligated to replace the Articles, the cost of such replacement shall be its fair market value and not any implicit value. Exponent, unless other specific arrangements are made, will maintain technical files and evidence for 30 days after the completion of work. Exponent will retain financial records according to I.R.S. requirements, but in no event less than 1 year after completion of the work.

9. Neither party shall use the other party's (or any of its affiliates' or its personnel's) name(s), trade names, service marks, trademarks, trade dresses, logos, symbols, or the like in any form for advertising, publicity, marketing, or in any way that could be construed as endorsement or promotion and the like without the prior written consent of the other party in each instance.

10. This agreement is solely between, and may only be enforced by, Exponent and the client, and this agreement shall not create or be construed to create any third party rights, obligations, or liabilities including, but not limited to, affiliates, employees, contractors, stockholders, licensees, or the like. Any deliverables, recommendations, or service provided by Exponent shall be for the client's use only. Exponent's services are expressly limited to the terms herein and are not modified or supplemented by terms of the client's purchase order and such terms shall be null and void. Exponent will reference the client's purchase order for billing purposes only.

11. Upon receipt of written notice from the client, Exponent will terminate work under this agreement. Work under a fixed-price agreement that is terminated before completion will be billed on a percentage of completion basis. Exponent may terminate work under this agreement only for cause. "Cause" includes, but is not limited to, development of a material conflict of interest, delinquency in payment, judicially required participation in onerous discovery or other legal process outside the intended scope of the work, or the presence of circumstances beyond Exponent's control, such as natural disasters or government intervention. Exponent shall not be liable for any delay or failure to perform resulting from unforeseen causes beyond its reasonable control.

12. If Exponent is required to testify or to produce information regarding work under this agreement in response to a subpoena or court order in any third party litigation reasonably arising out the work under this agreement, the client agrees to provide counsel of its choosing and to pay Exponent's reasonable time and expenses, including reasonable attorney's fees associated with responding to such request. In the event of any such request, Exponent will promptly notify the client to enable the client to object to any such testimony or production. This paragraph is not intended to apply to claims between Exponent and the client.

13. During the term of this agreement, each party shall comply with applicable laws and regulations, including laws and regulations on anti-trust, anti-bribery, anti-corruption, trade compliance, employment, privacy, and data protection. This agreement shall be construed, and the legal relations between the parties hereto shall be determined, in accordance with the internal laws of the state of California, without regard to the conflicts of laws principles of such state. The parties to this agreement consent to the jurisdiction of any state or federal court located in San Francisco, California. Exponent shall recover attorney fees and costs incurred in enforcing payment obligations hereunder.

Rev. 092822